IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § § § § § § § § § § | |
| v. | | Criminal Action No. C-07-340 |
| MARCEL DE LEON | | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

On this day came on to be considered Defendant Marcel De Leon's motion to suppress (D.E. 23). For the reasons set forth below, Defendant's motion to suppress is hereby DENIED.

**I.   Background**

On June 15, 2007, at approximately 2:30 AM, Border Patrol Agent Arnold De Leon noticed two people on a motorcycle traveling north on Highway 281.[1] The motorcycle was traveling at a relatively slow speed for highway travel, approximately 40 miles per hour. The motorcycle was making a great deal of noise, and seemed to be dragging under the weight of the two passengers. At the point Agent De Leon saw the motorcycle, the vehicle was just pulling out of a state rest park located near the Falfurrias checkpoint. This state rest park was known as an area where

---

[1] The factual background of this case is based on the testimony of Border Patrol Agents Ramon, Esquivel, De Leon and Jones, at the July 23, 2007 hearing before this Court on Defendant's motion to suppress.

traffickers often picked up illegal aliens who had walked through the brush around the Falfurrias checkpoint.

At the time Agent De Leon saw the motorcycle, Agent De Leon was responding to a call for assistance from another Border Patrol unit. Agent De Leon radioed out over the Border Patrol service radio, asking Border Patrol Agent Cruz Esquivel to take a look at the motorcycle with the two occupants. This call went out over the service radio, so it was heard by Border Patrol Agents back at the Falfurrias checkpoint. Upon hearing Agent De Leon's call, Supervising Border Patrol Agent Don Jones immediately radioed back that a motorcycle had just passed through the checkpoint with a single occupant, and that the Agents in the field should stop the vehicle.

Of note, when the Defendant passed through the Falfurrias checkpoint, he stopped, parked his motorcycle, and asked to enter the building to clean the face shield of his motorcycle helmet.[2] Border Patrol Agent Alejandro Ramon escorted the Defendant to a sink where Defendant could wash the face shield. The Defendant was inside the building for approximately two to three minutes, and while he was inside the motorcycle was parked in the secondary inspection area.

Also of note, Border Patrol Agents only recalled one

---

[2]Supervising Border Patrol Agent Jones recalled seeing the Defendant come into the building to clean off the face shield, and Agent Jones also observed the Defendant's motorcycle parked in the secondary inspection area.

motorcycle passing through the checkpoint on that night between 12:45 AM and 3:00 AM. At the time of the events in question, traffic through the checkpoint was very light, approximately one vehicle every five minutes. Border Patrol Agents recalled that the Defendant was alone on the motorcycle when he passed through the checkpoint.[3]

After hearing the service radio traffic regarding the motorcycle, Border Patrol Agent Cruz Esquivel observed the motorcycle on Highway 281 heading north. Agent Esquivel observed that the motorcycle appeared to be straining under the weight of the two occupants, and he noted that the passenger was carrying a backpack of the type often carried by illegal aliens who spent time hiking through the brush. Agent Esquivel also noted that the passenger on the motorcycle was not wearing a helmet. Agent Esquivel indicated that based on the recent radio traffic, the time of night and the location of the motorcycle in an area known for alien trafficking, Agent Esquivel initiated a traffic stop of the motorcycle and conducted an immigration inspection. At the traffic stop, the Defendant, Marcel De Leon, was identified as the driver. The passenger was identified as Jose Aaron Lucero-Rocha, who was determined to be an illegal alien. The Defendant was charged with one count of alien transporting, in violation of 8 U.S.C. § 1324.

---

[3]At the hearing before the Court on Defendant's motion to suppress, two separate Border Patrol Agents testified that they recognized the Defendant as the individual who stopped to clean his face shield at the Falfurrias checkpoint station.

On July 17, 2007, Defendant filed his motion to suppress "the evidence uncovered as a result of the traffic stop" (D.E. 23). The United States filed its response on July 18, 2007 (D.E. 25).

**II. Discussion**

    **A.    Roving Border Patrol Traffic Stops**

        **1.    Brignoni-Ponce Standard**

In this case, the traffic stop on the Defendant's motorcycle was conducted by a roving border patrol. Such roving border patrol traffic stops are governed by a special Fourth Amendment analysis enunciated by the Supreme Court in United States v. Brignoni-Ponce, 422 U.S. 873 (1975). See United States v. Inocencio, 40 F.3d 716, 722 (5th Cir. 1994) ("Due to the fact that this case involves a roving Border Patrol stop, our analysis is guided by the principles enunciated by the United States Supreme Court in [the case of Brignoni-Ponce]"). Under the Brignoni-Ponce standard, the "Border Patrol officers on roving patrol may temporarily detain vehicles for investigation *only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle is involved in illegal activities.*" See, e.g., Inocencio, 40 F.3d at 722 (emphasis supplied) (quoting United States v. Cardona, 955 F.2d 976, 977 (5th Cir. 1992); Brignoni-Ponce, 422 U.S. at 884); United States v. Cortez, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person

stopped is, or is about to be, engaged in criminal activity"); see also United States v. Morales, 191 F.3d 602, 603-04 (5th Cir. 1999) (stating that "officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain, inter alia, aliens who may be illegally in the country").  Under this standard, "[r]easonable suspicion requires more than a mere unparticularized hunch, but considerably less than proof by a preponderance of the evidence." United States v. Hernandez, 477 F.3d 210, 213 (5th Cir. 2007) (citing United States v. Gonzalez, 190 F.3d 668, 671 (5th Cir. 1999).

In determining whether a Border Patrol agent acted with reasonable suspicion in conducting a stop, the district court may consider all relevant factors including, but not limited to:

(1) the known characteristics of the area in which the Border Patrol Agent encounters a vehicle;

(2) the proximity to the border;

(3) the usual patterns of traffic on the particular road;

(4) the Border Patrol Agent's previous experience with alien traffic;

(5) information about recent illegal border crossings in the area, or other criminal activity there;

(6) the driver's behavior, such as erratic driving or obvious attempts to evade officers;

(7) the type of vehicle, or its other characteristics,

>              such as types known to officers to be frequently
>              used for transporting concealed aliens;
>
> (8)   whether the vehicle appears to be heavily loaded;
>
> (9)   whether the vehicle has an extraordinary number of
>       passengers;
>
> (10)  whether the passengers are trying to hide; and
>
> (11)  whether the border patrol officer recognizes the
>       characteristic appearance of persons who live
>       outside the United States, such as in Mexico.

United States v. Morales, 191 F.3d 602, 603-04 (5th Cir. 1999); Inocencio, 40 F.3d at 722; United States v. Casteneda, 951 F.2d 44, 47 (5th Cir. 1992) (citing United States v. Melendez-Gonzalez, 727 F.2d 407, 411 (5th Cir. 1984).

"Reasonable suspicion, however, is not limited to an analysis of any one factor." Inocencio, 40 F.3d at 722; see also Cardona, 955 F.2d at 980 (the absence of a particular factor will not control a court's conclusions); United States v. Jacquinot, 258 F.3d 423, 427-28 (5th Cir. 2001) ("The reasonable suspicion analysis is a fact-intensive test in which the court looks at all circumstances together to weigh not the individual layers, but the laminated total"); United States v. Moreno-Chaparro, 180 F.3d 629, 631-32 (5th Cir. 1998) ("No single factor is determinative; the totality of the particular circumstances must govern the reasonableness of any stop by roving border patrol officers"). "Instead, since reasonable suspicion is a fact intensive test, each case must be examined from the totality of the circumstances known

to the agent, and the agent's experience in evaluating such circumstances." See, e.g., Inocencio, 40 F.3d at 722 (citing Casteneda, 951 F.2d at 47); see also Morales, 191 F.3d at 603-04 ("Obviously, only those factors known to the officer at the time of the stop can be considered when determining whether the stop was reasonable"). Notably, the Fifth Circuit has advised that "in all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry, smuggling, or other criminal activity." Morales, 191 F.3d at 604 (citing United States v. Aldaco, 168 F.3d 148, 151 (5th Cir. 1999). "Factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers." Jacquinot, 258 F.3d at 427-28.

### 2. Distance from the Border - Not a Dispositive Factor if Agents do not Base Stop on Border Proximity

One element that courts "frequently focus[] on, however, is whether an arresting agent could reasonably conclude that a particular vehicle originated its journey at the border." Inocencio, 40 F.3d at 722 (quoting Melendez-Gonzalez, 727 F.2d at 411). When the stop occurs a "substantial distance from the border," this element is missing. Id. Typically, the Fifth Circuit has stated that "[v]ehicles traveling more than fifty miles from the border are usually a 'substantial' distance from the border." See Id. at 722, n.7 (citing Cardona, 955 F.2d at 980;

Melendez-Gonzalez, 727 F.2d 407 (5th Cir. 1984)); United States v. Orozco, 191 F.3d 578 (5th Cir. 1999) ("a car traveling more than fifty miles from the border is usually viewed as being too far from the border to support an inference that it originated its journey there") (quoting United States v. Jones, 149 F.3d 364, 368 (5th Cir. 1998)).

"On the other hand, ***if the agents do not base the stop on the vehicle's proximity to the border, [the] Brignoni-Ponce [test] may still be satisfied if other articulable facts warrant reasonable suspicion***." Id. at 722 (emphasis added); see also United States v. Henke, 775 F.2d 641, 645 (5th Cir. 1985); United States v. Salazar-Martinez, 710 F.2d 1087, 1088 (5th Cir. 1983) (proximity to the border is not a controlling Brignoni-Ponce factor if other articulable facts give rise to the requisite reasonable suspicion); Melendez-Gonzalez, 727 F.2d at 411; United States v. Ceniceros, 204 F.3d 581, 584 (5th Cir. 2000) ("Close proximity to the border is not required if other specific articulable facts support a finding of reasonable suspicion").  The Fifth Circuit cautioned, however, that "[i]n that instance, the facts offered by the government to support a reasonable suspicion will be examined charily," with great caution. Inocencio, 40 F.3d at 723 (citing Salazar-Martinez, 710 F.2d at 1088; Henke, 775 F.2d at 645); Orozco, 191 F.3d at 582 ("Moreover, we look at the remaining factors most carefully to ensure the stop complied with the requirements of the Fourth

Amendment") (citing <u>United States v. Rodriguez-Rivas</u>, 151 F.3d 377, 380 (5th Cir. 1998).

### B. **<u>Articulable Facts Warranted Reasonable Suspicion for the Traffic Stop of Defendant's Motorcycle</u>**

Under the <u>Brignoni-Ponce</u> standard set forth above, the Border Patrol Agents in this case had reasonable suspicion to initiate the traffic stop on the Defendant's motorcycle. Agent De Leon spotted a motorcycle with two occupants very late at night, in very close proximity to the Falfurrias checkpoint. This was an area known for alien trafficking[4], just north of a state rest stop that was a known pick-up point for aliens who had walked through the brush to avoid the checkpoint. Upon seeing the motorcycle, Agent De Leon radioed out over the Border Patrol service radio asking another Agent to take a look at the motorcycle with the two occupants. Supervising Border Patrol Agent Jones immediately responded that a motorcycle had just passed through the checkpoint with only one occupant. It was very late at night, traffic had been very light at the checkpoint, and only one motorcycle had passed through the checkpoint that night. Further, Defendant had actually stopped, parked his motorcycle, and gone in the building to clean the face shield of his helmet – increasing his visibility at the Falfurrias

---

[4]At the hearing before the Court on July 23, 2007, Border Patrol Agents testified that over 10,000 illegal aliens have been apprehended in and around the Falfurrias checkpoint since September, 2006.

checkpoint as he passed through. Also of note, when observed by Agents De Leon and Esquivel, the motorcycle was going slowly, appeared to be straining under the weight of the two occupants, and the passenger carried a backpack of a type that was common to aliens who had just walked through the brush. Given the confluence of these factors, especially the recent passage of a motorcycle through the checkpoint with a single occupant, it was eminently reasonable for the Border Patrol Agents to be suspicious that this motorcycle had just picked up a passenger immediately to the north of the checkpoint. Accordingly, under the standard articulated in <u>Brignoni-Ponce</u>, numerous articulable facts gave rise to reasonable suspicion for the Border Patrol Agents to initiate the traffic stop of the Defendant's motorcycle. The traffic stop therefore did not violate the Fourth Amendment to the United States Constitution.[5]

### III. <u>Conclusion</u>

For the reasons stated above, the Court hereby DENIES

---

[5] Of note, Defendant's motion to suppress places great emphasis on the location of the traffic stop as distant from the United States/Mexico border. The distance of the stop from the border is not a dispositive factor. Rather, if Border Patrol Agents do not base their stop on the vehicle's proximity to the border, the <u>Brignoni-Ponce</u> factors may still be satisfied if other articulable facts warrant reasonable suspicion. <u>Inocencio</u>, 40 F.3d at 722. In this case, as set forth above, other articulable facts do warrant reasonable suspicion for the traffic stop. Moreover, there is no indication that the Border Patrol Agents conducted the traffic stop because of the motorcycle's proximity to the border – rather, the stop was conducted because the motorcycle had two occupants, while a motorcycle passing through the checkpoint minutes earlier was only manned by the driver.

Defendant Marcel De Leon's motion to suppress (D.E. 23).

SIGNED and ENTERED this 24th day of July, 2007.

_____
Janis Graham Jack
United States District Judge